[No. 25167-8-I. Division One. April 22, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS E. MILLER, *Appellant*.

*Thomas S. Olmstead,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanette Dalton, Deputy,* for respondent.

COLEMAN, J.—Thomas E. Miller appeals from the judgment and sentence entered against him for second degree rape, claiming that the court erred by relying upon unsupported findings of fact and conclusions of law to impose an exceptional sentence of 54 months. We remand for resentencing.

On September 22, 1989, Miller pleaded guilty to a charge of rape in the second degree, and a conviction was duly entered on November 7, 1989. A presentence investigation report indicated that the rape victim, C, had previously dated Miller, but had broken off the relationship in 1987, allegedly due to Miller's assaultive and violent behavior.

Because Miller continued to harass her, C obtained a protection order against him on July 17, 1989, but it was never properly served. Miller went to C's home on July 26,

1989, to retrieve his belongings and, as Miller later admitted to the community corrections officer (CCO) who compiled the presentence investigation report, he became angry and violent and "forced [C] against her will to have sex with [him]."

The presentence report further revealed that Miller's criminal history included a 1974 conviction for second degree assault and attempted rape. A 10–year maximum sentence was imposed on August 26, 1974, and was later reduced to a 5–year sentence after the conviction was amended to second degree assault. On September 29, 1978, Miller was released from prison after having received 26 months of sexual deviancy treatment at Western State Hospital during his incarceration. Miller also received an additional 18 months of follow–up services on an outpatient basis after his release.

Miller was the only source for the criminal history and treatment information presented in the presentence investigation report. The report specified that no psychological or psychosexual evaluation of Miller had been attempted and that his psychological records from Western State Hospital were unavailable when the sentencing report was completed.

During the sentencing hearing for Miller's 1989 second degree rape conviction, the State recommended the maximum standard sentence of 27 months plus no contact with the victim for 10 years, restitution, and community placement and treatment upon release. This recommendation was based upon a zero offender score and a seriousness level of 8. The defendant requested 21 months, the minimum time in the standard range. *See* RCW 9.94A.310 (Table 1).

Relying upon the presentence report, the court imposed an exceptional sentence of 54 months, twice the maximum time of the standard range. The court based its decision upon future dangerousness shown by "the defendant's history of similar acts, pattern, or trend of behavior" involving

the rape or attempted rape of a girl friend and the fact that Miller told the CCO that the current offense was very similar to the 1974 offense. The court noted that Miller "underwent 26 months of sexual deviancy treatment at Western State Hospital and was on the outpatient program for 18 months" which "clearly . . . was not effective with the defendant." Believing that Miller continued to present a threat to any girl friends he might have, the court concluded that the standard sentence was not commensurate with Miller's dangerousness "which still continues after substantial in–patient treatment for sexual deviancy."

In its conclusions of law, the court identified four reasons to justify imposing a sentence beyond the standard range:

■ Defendant represents a danger to the community.
■ Defendant's pattern of behavior in the present case is similar to a prior conviction in 1974 for attempted rape.
■ Defendant's completion of a 26 month sexual deviancy program was unsuccessful.
■ The standard range in the above–entitled case is not commensurate with the defendant's dangerousness to the community.[1]

Miller appeals the exceptional sentence.

■ RCW 9.94A.210(4) is a necessary starting point for analyzing the propriety of an exceptional sentence. The statute specifies the three conditions under which a reviewing court may reverse a sentence outside the presumptive sentence range: (1) when the reasons relied upon by the sentencing judge are not supported by the record under the clearly erroneous standard; (2) when those reasons do not justify a sentence outside the standard range as a matter of law; or (3) the sentence imposed was clearly excessive or clearly too lenient. *See, e.g., State v. Nordby*, 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986). Miller does not claim that the 54–month sentence was clearly excessive; thus, only the first and second conditions above must be addressed. *Nordby*, at 517.

---

[1]The court's findings of fact were essentially identical to its conclusions of law.

We initially consider whether a finding of "future dangerousness" is a sufficient reason, as a matter of law, to impose an exceptional sentence under the sentencing reform act (RCW 9.94A).

 Miller argues that it is not,[2] but the issue was in effect resolved by the Supreme Court's recent opinion of *State v. Pryor,* 115 Wn.2d 445, 454, 799 P.2d 244 (1990), which defined future dangerousness and discussed the evidence needed to show the defendant's lack of amenability to treatment. *See also In re George,* 52 Wn. App. 135, 147, 758 P.2d 13 (1988); *State v. Harp,* 43 Wn. App. 340, 717 P.2d 282 (1986). Clearly, the Washington courts recognize that a finding of future dangerousness may justify the imposition of an exceptional sentence when a defendant poses a threat to the community "beyond that which could be ameliorated by incarceration for a period conforming to the standard range." *State v. Vandervlugt,* 56 Wn. App. 517, 523, 784 P.2d 546 (1990). Nothing more needs to be said in this regard.

We next decide whether the record supported the findings of fact relied upon by the trial court to impose an exceptional sentence.

Miller concedes that he was convicted of attempted rape in 1974 and that that offense involved a woman who had been his girl friend. He also acknowledges that he completed a 26–month sexual deviancy program as a consequence of that rape. However, Miller claims that the record

---

[2]For example, Miller relies upon *State v. Pascal,* 108 Wn.2d 125, 736 P.2d 1065 · (1987) as analogous support because *Pascal* held that imposing a more lenient sentence than that specified by the standard range was not justified merely because the defendant posed no danger to the public. *Pascal,* at 137.

Miller's reasoning, however, is fallacious. Incarceration has a dual role of protecting the public and punishing the wrongdoer. In *Pascal,* the court recognized that, in keeping with the sentencing reform act, the punishing consequence of incarceration had to be satisfied by imposition of a sentence within the standard range even though the defendant would not likely endanger the public. *See* RCW 9.94A.010. In contrast, it is appropriate and necessary to impose a sentence *beyond* the standard range when the circumstances require both punishment of the defendant and the protection of the public.

does not support the trial court's findings that the sexual deviancy treatment program was unsuccessful and that he is a future danger to society.

The *Pryor* court held that a finding of future dangerousness is supportable if the evidence shows (1) that the defendant has a history of similar acts and (2) that the defendant is not amenable to treatment, as evidenced by a mental health professional's opinion to that effect. *Pryor,* at 454, 455. The obvious aim of the *Pryor* court was to require some form of objective verification of a defendant's future dangerousness.

Although the literal language of *Pryor* suggests that the defendant must be professionally evaluated before a court could find a lack of amenability to treatment, we do not believe that the Supreme Court intended to preclude a trial court from first considering other critical factors. For example, a defendant in theory might be a candidate for therapy but would not be "amenable to treatment" if the record establishes that (1) no treatment programs are available; (2) the defendant is ineligible for treatment at all available facilities due, for instance, to prior unsuccessful treatment; (3) the defendant refuses to cooperate with necessary evaluations to determine the usefulness of treatment; or (4) no facility is sufficiently secure to house the defendant during treatment. Circumstances such as these would, in effect, demonstrate that treatment was not available as contemplated by *Pryor.* In sum, if the risk of a defendant's future dangerousness can be minimized or eliminated by available treatment, an exceptional sentence would not be justified. Otherwise, such a sentence would be warranted.

In the present case, the evidence is insufficient to show that Miller was not amenable to treatment. The record has no information about whether an appropriate treatment program was available for Miller or whether he would be eligible for such treatment. Likewise, nothing in the record indicates whether Miller's treatment following the 1974

conviction was successful or whether he currently is responsive to treatment, as *Pryor* requires. It is possible, perhaps probable, that a mental health professional would conclude that Miller would not benefit from therapy because he raped C after receiving 26 months of sexual deviancy treatment. However, no testimony was presented that would permit such a determination. Because of these inadequacies, the case must be remanded for further fact finding.

Finally, we consider whether the trial court erred by considering Miller's 1974 conviction as part of his prior history for purposes of determining his future dangerousness.

Miller asserts that the sentencing reform act precluded the court from considering his 1974 conviction as part of a future dangerousness analysis because that conviction was "washed out" by RCW 9.94A.360(2). That statute, known as the "decay" policy, places a restriction on the use of prior convictions for a sentence determination. D. Boerner, *Sentencing in Washington* § 5.6(d), at 5–10 (1985). It provides that

> [c]lass B prior felony convictions *shall not be included in the offender score,* if since the last date of release from confinement . . . pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without being convicted of any felonies. . . .

(Italics ours.) RCW 9.94A.360(2).

The trial court did not include the 1974 conviction in determining Miller's offender score; that score was set at zero because Miller was not convicted of any felony during the 10 years following his release from confinement on September 29, 1978. However, the court found that Miller's 1974 conviction for attempted rape demonstrated a history of similar acts which in turn led the court to find that Miller was a future danger to society.

We find that the court correctly considered the 1974 conviction for purposes of determining Miller's future dangerousness. Because a defendant's history of similar acts must be considered in determining future dangerousness,

*Pryor,* at 454, it would be inconsistent to hold that RCW 9.94A.360(2) precluded a complete review of the defendant's criminal history when evaluating the possibility of future dangerousness.[3] Consequently, we remand for resentencing consistent with this opinion.

WEBSTER, A.C.J., and AGID, J., concur.

---

[3]Miller's reliance upon *State v. Herzog,* 48 Wn. App. 831, 834, 740 P.2d 380 (1987) is altogether undermined by the later case of *State v. Herzog,* 112 Wn.2d 419, 430, 771 P.2d 739 (1989), which held that a sentencing judge has broad discretion when determining an appropriate sentence and may consider a broad range of factors.