[No. 25593-2-I. Division One. July 22, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY ARTHUR DEMARA, *Appellant.*

---

24

*Anna-Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Carol Spoor, Deputy,* for respondent.

PEKELIS, J. — Larry DeMara appeals his conviction on two counts of first degree child molestation, contending that the trial court erred in imposing an exceptional sentence above the standard range. We affirm.

## I

According to the certificate of probable cause, on August 4, 1989, DeMara was baby-sitting H.M., age 8, and her younger brother A.M., age 3. The children's mother had gone out for the evening and DeMara, who was a friend and neighbor, had agreed to look after them. During the course of the evening DeMara and the children were watching television in the living room when DeMara told H.M. he would give her a dollar if she " 'would play with him down there.' " H.M. declined.

Later, when H.M. was using the bathroom, DeMara opened the bathroom door, pulled down his pants, and exposed his genitals to her. DeMara then retrieved a vibrator from the mother's bedroom and began to rub it over the children's bodies. He used the vibrator on A.M.'s penis, first over his clothing and then on A.M.'s bare penis. Still later in the evening, DeMara and the children

were on their mother's bed, when he raised H.M.'s night-shirt and placed his hands on her bare " 'private parts.' " DeMara touched H.M. a second time shortly before she went to bed for the night. The next day, H.M. told her mother what had happened. H.M.'s mother reported the incident to the police, and DeMara was arrested and charged by amended information with two counts of child molestation in the first degree, RCW 9A.44.083. He subsequently pleaded guilty to both counts.

At the sentencing hearing the State submitted a presentence report outlining DeMara's prior criminal acts and history of sexual deviancy treatment. According to the report, in 1980 DeMara was convicted in Oregon on three counts of first degree rape, three counts of first degree sexual abuse, and one count of first degree sodomy. The convictions stemmed from DeMara's sexual molestation of his son and two daughters. On February 1, 1985, DeMara was paroled from the Oregon State Penitentiary. From February 1, 1985, through February 17, 1987, DeMara's parole was revoked on two occasions, once for having unpermitted contact with minor children and another time for failing to complete a sex offender treatment program.

In June 1988, DeMara was convicted of first degree sexual abuse for an incident which occurred while he was on parole for the 1980 convictions. The victim was DeMara's 6-year-old stepdaughter.

The presentence report also provided information relating to DeMara's history of sexual deviancy treatment, including the following:

> In July 1985, the defendant participated in two sessions of sex offender therapy with William W. Davis, MD. Dr. Davis observed the defendant as "attempting to manipulate the therapist to meet his own needs rather than confronting himself with his own behavior." Dr. Davis concluded that the defendant was not appropriate for outpatient therapy.
>
> In June 1986, the defendant participated, for a period of four months, in sex offender therapy with Stephen T. Moe, MS.

Mr. Moe reported that although compliant with treatment, the defendant exhibited "serious social deficiencies, limited avenues for gratification, and few coping skills, which make him particularly vulnerable to external stressers [*sic*]. He is inclined to assume the victim position, in an effort to elicit support or sympathy for his irresponsible behavior. He tends to minimize or rationalize his deficiency." In a report dated August 21, 1986, Mr. Moe stated, "because of the compulsive nature of the disorder, Mr. DeMara's history of sexual abuse, and his unstable personality structure, Mr. DeMara should be considered a high risk to reoffend if he does not successfully complete a sex offender treatment program."

In April 1988, following the conviction for Sexual Abuse in the First Degree, the defendant contacted the Northwest Treatment Associates in Seattle, Washington, to undergo a sex offender evaluation. Contact with Mr. Roger Wolf, evaluator, revealed that the evaluation process would take approximately four to six weeks to complete. On May 1, 1988, Mr. Wolf reported that the defendant's evaluation had been completed and would be submitted to the Court prior to sentencing on June 8, 1988. Mr. Wolf indicated that the defendant "is a chronic offender, *is in need of inpatient treatment*, is defensive, *not motivated for treatment*, believes he has an alcohol abuse problem. It is evident that he is predatory because he first establishes a relationship with the victim prior to deviant behavior." Mr. Wolf related that *incarceration at the state level is necessary for the protection of the public.*

(Italics ours.)

Based on the prior felony convictions contained in the presentence report, DeMara's offender score was 6 and the standard sentencing range for each count was 67 to 89 months. The State recommended an exceptional sentence of 144 months. DeMara requested a sentence within the standard range. The court sentenced DeMara to concurrent exceptional sentences of 120 months on each count. Pursuant to RCW 9.94A.120(3), the trial court entered the following findings and conclusions in support of the exceptional sentence:

### FINDINGS OF FACT
1. The defendant poses a substantial danger to the public. The defendant has 4 prior felony convictions for sexual

assault on children. He committed the acts which led to his 1988 conviction for Sexual Abuse in the First Degree while on parole for other sex offenses. He committed the instant offenses while still on parole for the 1988 sexual offense. All of these facts establish the defendant's potential future dangerousness to the public, which justifies a sentence above the standard range. The defendant has received sexual deviancy treatment in the past but his conduct continues unabated. The defendant is not amenable to community based treatment and requires a lengthy incarceration in order to protect the public.

2. The multiple offense policy of RCW 9.94A.400 results in a sentence clearly too lenient.

### CONCLUSIONS OF LAW

The above findings of fact establish substantial and compelling reasons that justify an exceptional sentence above the standard range pursuant to RCW 9.94A.120(2), and RCW 9.94A.390(2).

DeMara appeals, claiming that the court's reasons are not supported by the record and that the reasons do not support an exceptional sentence as a matter of law.

### II

■ In reviewing an exceptional sentence, this court must first determine whether the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. RCW 9.94A.210(4)(a). As this is a factual determination, the sentencing judge's reasons will be upheld unless they are clearly erroneous. *State v. Estrella*, 115 Wn.2d 350, 355, 798 P.2d 289 (1990); *State v. Fisher*, 108 Wn.2d 419, 423, 739 P.2d 683 (1987). Additionally, the reasons must be "substantial and compelling" enough to merit deviation from the standard range as a matter of law. RCW 9.94A.210(4)(a).

■ DeMara contends first that, as a matter of law, an exceptional sentence upward cannot be based upon the defendant's future dangerousness. This issue, however, was recently resolved by the State Supreme Court in *State v. Pryor*, 115 Wn.2d 445, 454, 799 P.2d 244 (1990), which defined future dangerousness and delineated the type of evidence needed to establish this factor. *See also*

*State v. Tunell*, 51 Wn. App. 274, 282-83, 753 P.2d 543, *review denied*, 110 Wn.2d 1036 (1988). There can now be no doubt that "the Washington courts recognize that a finding of future dangerousness may justify the imposition of an exceptional sentence when a defendant poses a threat to the community 'beyond that which could be ameliorated by incarceration for a period conforming to the standard range.'" *State v. Miller*, 60 Wn. App. 914, 918, 808 P.2d 186 (1991) (quoting *State v. Vandervlugt*, 56 Wn. App. 517, 523, 784 P.2d 546 (1990)).

█ We therefore address DeMara's next contention that the evidence does not support the trial court's reliance on future dangerousness as an aggravating sentencing factor here. In general, the trial court may impose an exceptional sentence based on future dangerousness where (1) the defendant has a history of similar criminal conduct and, where the crime is a sexual offense, (2) the defendant is not amenable to treatment, as established by a mental health professional's opinion to that effect. *Pryor*, 115 Wn.2d at 454.

Here, there is no question that DeMara has a lengthy history of similar acts of sexual abuse. In 1980 he was convicted of rape in the first degree, sexual abuse in the first degree and sodomy in the first degree. In 1988, while still on parole for his prior offenses, he was convicted of sexual abuse in the first degree. These offenses were committed against young victims.

The record also establishes that DeMara was not amenable to treatment. Each of the mental health professionals consulted expressed the opinion that outpatient therapy was not appropriate for DeMara. The most recent evaluation, conducted for purposes of this sentencing, was by Roger Wolf of Northwest Treatment Associates, specialists in sexual deviancy. Wolf reported that DeMara was a "chronic offender", that he was "not motivated for treatment", and that "incarceration at the state level is necessary for the protection of the public." We conclude that this provided the trial court with sufficient evidence

to support its conclusion that DeMara presented a threat of future danger which, in turn, justified an exceptional sentence.

DeMara next contends that the record does not support the trial court's second reason for imposing an exceptional sentence, that the multiple offense policy of RCW 9.94A.400 results in a sentence that is clearly too lenient. RCW 9.94A.390(2)(g) (formerly (f)). We agree.

■ As a preliminary note, it is questionable whether RCW 9.94A.400 could apply here under the analysis set out in *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987). We need not decide this issue, however, because the trial court did not enter any findings supporting its determination that sentencing DeMara within the standard range would be clearly too lenient. Under RCW 9.94A.120(3), whenever an exceptional sentence is imposed, the trial court "shall set forth the reasons for its decision in written findings of fact and conclusions of law." As our Supreme Court recently stated in *State v. Batista*, 116 Wn.2d 777, 788, 808 P.2d 1141 (1991), "[a] conclusory statement that the presumptive sentence is clearly too lenient is insufficient to support an exceptional sentence". Thus, the record does not support the trial court's second reason for departing from the presumptive sentencing range.

### III

■ Because only one of the court's two reasons is valid, we must next decide whether a remand for resentencing is required. When this court is able to conclude that the trial judge would still impose the same sentence even when he considered only the valid reasons, remand is not required. *See In re George*, 52 Wn. App. 135, 149, 758 P.2d 13 (1988); *State v. Tunell*, 51 Wn. App. at 284. However, remand is required "when the trial court places significant weight on an inappropriate factor, or where some factors are inappropriate and the exceptional sentence significantly deviates from the standard range." *Pryor*,

115 Wn.2d at 456; *see also State v. Dunaway*, 109 Wn.2d 207, 219-20, 743 P.2d 1237, 749 P.2d 160 (1987) (remand appropriate where two of three reasons were invalidated and sentence was 20 years above midpoint of standard range).

In this case, it is clear from the court's oral opinion that DeMara's history of similar criminal conduct and lack of amenability to treatment were the primary reasons for the imposition of the exceptional sentences. These reasons were properly considered by the court and in themselves justify the exceptional sentence. Because we are confident that the court would impose the same sentence on this basis alone, a remand is unnecessary. We affirm.[1]

Affirmed.

BAKER and KENNEDY, JJ., concur.

---

[1]The State claims that this court could also affirm the exceptional sentence on the basis of the trial court's oral finding that DeMara abused a position of trust. However, because we have concluded that the court placed considerable reliance on the aggravating factor of future dangerousness, we need not address the State's alternative ground.