[No. 30976-5-I. Division One. February 7, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DARREL WAYNE STEWART, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Carol Spoor, Deputy,* for respondent.

GROSSE, J. — Darrel Wayne Stewart appeals an exceptional sentence imposed after he pleaded guilty to two counts of attempted first degree kidnapping, two counts of second degree assault, and one count of violation of the Uniform Firearms Act (VUFA) (felon in possession of a firearm).

This matter is before the court after remand from this court for resentencing.[1] In the first sentencing, after Stewart's plea,[2] the trial court imposed an exceptional sentence based on its findings (1) of future dangerousness and (2) that the multiple offense policy of RCW 9.94A.400 resulted in a clearly too lenient sentence. Stewart was sentenced to the statutory maximum of 120 months on each kidnapping count, the statutory maximum of 60 months on the VUFA count, and 96 months on each assault count. The court ordered the two kidnapping and the VUFA sentences to run consecutively and the assault sentences to run concurrently with the kidnapping sentences, for a total term of 300 months.

---

[1] *State v. Stewart*, cause 24824-3-I (Dec. 16, 1991) (*Stewart* I).

[2] Stewart pleaded guilty to the VUFA charge and entered *Alford* pleas to the attempted first degree kidnapping charges and general guilty pleas to the two assault charges. *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

Stewart appealed the exceptional sentence and we reversed and remanded for resentencing. We found (1) the record did not support a finding of future dangerousness because there was no evidence of lack of amenability to treatment, and (2) the record did not reveal the basis for the trial court's clearly too lenient finding.

In 1975, Stewart had been convicted in Colorado of sexual assault on a child, kidnap, attempted rape, deviant sexual intercourse·by force, theft, and burglary.[3] At a preliminary resentencing hearing, the court determined that in order to address the clearly too lenient issue, it needed to know the details of Stewart's prior conviction in Colorado and also to hear testimony from the victims of the current offense, C.M. and her niece, K.S.

At resentencing, the trial court received and reviewed the trial record and police reports from the Colorado incident and heard testimony from C.M. The court also considered a classification study of Stewart compiled by the Nebraska Penal and Correctional Complex in 1973 and a diagnostic summary and rehabilitation plan prepared by the Colorado Department of Corrections in 1976. The court found that Stewart's crimes were sex crimes, that he was not amenable to treatment, and that the standard range penalty was clearly too lenient. The court again imposed a sentence of 120 months on each attempted kidnapping count and 60 months on the VUFA count, each to run consecutively, and 60 months on each assault count to run concurrently, for a total of 300 months.

In this appeal, Stewart contends the trial court erred in taking evidence on resentencing, in finding that his crimes were committed with sexual motivation, and in holding that the sentence was justified by the clearly too lenient factor. We hold the trial court did not err in taking additional evi-

---

[3]The record shows, with respect to the Colorado conviction, Stewart entered an apartment through a window and abducted a 6-year-old girl from her bed. He forcibly orally raped her, attempted vaginal rape, and threatened to kill her if she did not comply. More than 8 hours after the abduction, Stewart took the girl to a wooded area, gagged her, tied her to a tree with wire, and left. Approximately 6 hours later, the girl freed herself, wandered into a campground, and was found by the caretaker.

dence on remand. We agree the trial court violated the state and federal ex post facto clauses by applying the sexual motivation statute, RCW 9.94A.390(2)(e), to impose an exceptional sentence, but nevertheless affirm, holding that the crimes for which Stewart was convicted were sexual offenses as that term is used in *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). We also affirm the conclusion that the operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient.

## FACTS

Stewart was charged with two counts of attempted first degree kidnapping, two counts of second degree assault, and one count of VUFA. Both attempted kidnapping counts included a deadly weapon allegation and alleged the crimes were committed "with intent to facilitate commission of the felony of rape, indecent liberties, robbery, and flight thereafter".

The victims of the crimes, C.M. and her 13-year-old niece, K.S., were at C.M.'s office in a Seattle building when they saw Stewart. C.M. recognized Stewart from having occasionally seen him in the building. She agreed to give Stewart a ride to Green Lake. During the drive, K.S. sat in the back seat and Stewart sat in the front passenger seat.

When they arrived at Green Lake, Stewart refused to get out of the car. C.M. drove to a nearby restaurant where she had often seen police cars, stopped the car, and again asked Stewart to get out. Stewart refused, pulled a gun from his jacket, and threatened to kill C.M. if she did not continue to drive. She refused and Stewart turned, pointed the gun between K.S.'s legs, and threatened to kill her. C.M. grabbed the gun and while she and Stewart were struggling, K.S. ran from the car into the restaurant. C.M. also managed to get out of the vehicle. After both women were inside the restaurant, Stewart left the vehicle and was arrested a few blocks away.

DISCUSSION

A. Procedure on remand after first appeal.

Stewart contends the trial court's receipt of evidence at the resentencing hearing was error because it violated the law of the case doctrine and collateral estoppel principles, and because it breached the plea agreement. We disagree.

A holding that the trial court relied on an improper factor in imposing an exceptional sentence does not preclude an exceptional sentence on remand. *In re Vandervlugt*, 120 Wn.2d 427, 437, 842 P.2d 950 (1992). "[R]emand for a presumptive sentence is required where all of the reasons said to support the exceptional sentence are held insufficient by an appellate court." *State v. Batista*, 116 Wn.2d 777, 793, 808 P.2d 1141 (1991). However, where the appellate court determines the trial court "misconstrued and misapplied the law, aside from the question of the sufficiency of the reasons given for an exceptional sentence," the court reverses and remands for resentencing in accord with the legal principles stated in the court's opinion. *Batista*, 116 Wn.2d at 794.

In *Stewart* I, we found the record did not support a finding of future dangerousness because there was no evidence of Stewart's lack of amenability to treatment. *State v. Stewart*, slip op. at 5-6. Where the trial court fails to address the amenability to treatment issue, a remand for further fact-finding is appropriate. *State v. Pryor*, 115 Wn.2d 445, 456-57, 799 P.2d 244 (1990); *State v. Miller*, 60 Wn. App. 914, 920, 808 P.2d 186 (1991). Thus, failure to address amenability to treatment is a misconstruction or misinterpretation of the law and is not tantamount to the imposition of an exceptional sentence for insufficient reasons.

In *Stewart* I, we found that the record did not reveal the basis for the clearly too lenient finding. *State v. Stewart*, slip op. at 6 (citing *State v. Batista*, 116 Wn.2d at 789). In *Batista*, the court treated the lack of a basis in the record as a misconstruction or misapplication of the law and not as an insufficient reason for the exceptional sentence. Consequently, the

court remanded for resentencing in accord with the principles announced and did not remand with an order to resentence the defendant within the standard range. Similarly, this court's finding in *Stewart* I was not a finding that the clearly too lenient factor was an insufficient reason for the exceptional sentence, but rather that the trial court misconstrued or misapplied the law. Therefore, taking additional evidence on this factor at resentencing was appropriate. *State v. Pryor*, *supra*; *State v. Miller*, 60 Wn. App. at 920.

■ Stewart claims the trial court violated the doctrine of law of the case by taking evidence on issues that had already been decided in *Stewart* I. We disagree. It is true that once the mandate issued this court's decision "became the law of the case and superseded the trial court's findings on every issue that the appellate court decided." *State v. Strauss*, 119 Wn.2d 401, 412, 832 P.2d 78 (1992). In *Strauss*, the Court of Appeals "explicitly held" the evidence was insufficient to support the findings of deliberate cruelty, sophistication and planning, and abuse of a position of trust, and this determination was binding on the trial court upon issuance of the Court of Appeals' mandate. *Strauss*, 119 Wn.2d at 412. However, in *Stewart* I, this court did not examine the sufficiency of the evidence to support each aggravating factor, but rather ended its analysis with the determination that the trial court misconstrued the applicable law, failed to address amenability, and failed to include a basis for its clearly too lenient finding. Therefore, unlike in *Strauss*, the trial court here was not bound by a determination that any of the reasons were insufficient and was free to receive additional evidence on both the future dangerousness and clearly too lenient aggravating factors.[4]

Stewart also contends taking additional evidence at resentencing violated the plea agreement. We disagree.

---

[4] For similar reasons, taking additional evidence at resentencing did not violate collateral estoppel principles. The issues raised and resolved in *Stewart* I are not identical to those sought to be barred here. *State v. Collicott*, 118 Wn.2d 649, 660-61, 827 P.2d 263 (1992). Moreover, unlike in *Collicott*, the trial court here did not determine at the first sentencing that no exceptional sentence would be imposed and then decide to impose an exceptional sentence on resentencing.

RCW 9.94A.370(2) provides in part:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence.

While it is true that in his statement on his guilty plea, Stewart agreed the court could read the certification for probable cause and use it as real facts for the basis of the plea and for sentencing purposes, this did not preclude the sentencing court from complying with the statute and holding an evidentiary hearing on other disputed material facts. Indeed, Stewart acknowledged in his statement that the State was planning to recommend an exceptional sentence. Thus, there was no breach of the plea agreement by the State in seeking an exceptional sentence. The evidentiary hearing on resentencing was proper.

B. Future dangerousness.

At resentencing, the trial court found Stewart's crimes were committed with sexual motivation and imposed an exceptional sentence "pursuant to RCW 9.94A.390(2)(e)".[5] That statute lists as an aggravating factor the fact that "[t]he current offense included a finding of sexual motivation pursuant to RCW 9.94A.127". At the time Stewart was convicted, however, RCW 9.94A.127, the sexual motivation statute, had not been enacted. Stewart contends application of

---

[5] "To reverse a sentence outside the sentence range, the reviewing court must find: (a) the reasons supplied by the sentencing judge are not supported by the record which was before the judge or those reasons do not justify a sentence outside the standard range for that offense; or (b) the sentence imposed was clearly excessive or clearly too lenient. Under the first part of subsection (a), the reasons set forth by the trial court for imposing the exceptional sentence shall be upheld by the reviewing court unless they are clearly erroneous. Under the second part of subsection (a), however, the reviewing court must independently decide as a matter of law whether the trial court's reasons justify the sentence." (Citations omitted.) *State v. Pryor*, 115 Wn.2d at 450.

this statute to his crimes violated the ex post facto clauses. U.S. Const. art. 1, § 10, cl. 1; Const. art. 1, § 23. We agree.

▉▉ A law violates the ex post facto clauses if it "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed". *Collins v. Young-blood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 110 S. Ct. 2715 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 70 L. Ed. 216, 46 S. Ct. 68 (1925)). Retroactive application of the subsequently enacted statute to Stewart's crimes made the punishment more burdensome after the crimes were committed by permitting use of a finding of sexual motivation pursuant to the statute to justify an exceptional sentence. Such application of the statute violated the state and federal ex post facto clauses.[6]

▉▉ ▉ This conclusion does not end our analysis. Future dangerousness may justify an exceptional sentence in sexual offense cases. *State v. Barnes*, 117 Wn.2d at 703 (citing *State v. Pryor, supra*). In our opinion, this is a sexual offense case. We recognize the term "sex offense" is specifically defined in the Sentencing Reform Act of 1981 (SRA).[7] However, the court in *Barnes* did not cite to either the SRA's definition section, the sexual motivation statute, or any other statute

---

[6]In light of our holding, we do not need to address Stewart's argument that the sexual motivation statute is unconstitutionally vague and overbroad. In any event, for the reasons set forth in *State v. Halstien*, 122 Wn.2d 109, 857 P.2d 270 (1993) with respect to the juvenile sexual motivation statute, RCW 13.40.135, Stewart's arguments are without merit.

[7]RCW 9.94A.030(29) provides:
" 'Sex offense' means:
"(a) A felony that is a violation of chapter 9A.44 RCW or RCW 9A.64.020 of 9.68A.090 or that is, under chapter 9A.28 RCW, a criminal attempt, criminal solicitation, or criminal conspiracy to commit such crimes;
"(b) A felony with a finding of sexual motivation under RCW 9.94A.127; or
"(c) Any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a sex offense under (a) of this subsection."

when referring to "sexual offense cases". In fact, the term used in *Barnes* most frequently is "nonsexual offense cases". In short, nothing in *Barnes* compels the conclusion that future dangerousness may be applied only to those offenses defined as sex offenses in the SRA. In fact, the court's discussion suggests the contrary.

The *Barnes* court discussed the rationale for treating sexual offenders and nonsexual offenders differently for sentencing purposes and noted that "[t]he options created for sexual offenders were authorized 'because it was believed that for these groups of offenders, requiring participation in rehabilitation programs is likely to prove effective in preventing future criminality.' " *State v. Barnes*, 117 Wn.2d at 708 (quoting D. Boerner, *Sentencing in Washington* § 2.5, at 2-37 (1985)). If the rationale for treating these offenders differently is the need for rehabilitation to prevent the commission of future sex offenses, it makes little sense to restrict a court's consideration of those crimes to which future dangerousness may be applied only to those defined as sex offenses in the SRA. As discussed below, Stewart's crimes were committed for purposes of his sexual gratification.

We hold that, for purposes of determining whether an offense is a sexual offense and whether future dangerousness may be considered as an aggravating factor, a court is not restricted to the SRA's definition of sex offense. Rather, for these purposes, the court should look at the defendant's acts in committing the crime and determine, from a commonsense perspective, whether the offense is capable of treatment as a sexual offense. If it is, future dangerousness may be considered as an aggravating factor.

Here, we find the offenses of which Stewart was convicted were committed for the purpose of Stewart's sexual gratification and were capable of treatment as sex offenses. The record shows that Stewart acted with sexual motivation. During the drive, Stewart repeatedly turned to look at K.S. in the back seat and either looked up her dress or at her legs. K.S. was uncomfortable with this and tried to pull her skirt down over her legs. When C.M. told Stewart to leave the car in the

restaurant parking lot, Stewart put the barrel of his gun between K.S.'s legs, pushed them apart, and threatened to kill her. The record does not show, however, that Stewart was seeking money from C.M. He did not demand money or attempt to grab her purse, and he refused C.M.'s offer of money. Similarly, the record does not show Stewart was merely seeking transportation from C.M. C.M. offered to drive Stewart somewhere if he would allow K.S. to leave the car, but Stewart refused. Also, when C.M. and K.S. left the car at the restaurant, instead of driving away, Stewart left the car and began walking up Aurora Avenue. Accordingly, we find that the trial court properly considered future dangerousness as an aggravating factor.

■ In order to justify a finding of future dangerousness in a sexual offense case, proof of both a criminal history of sexual offenses and lack of amenability to treatment is required. *State v. Pryor*, 115 Wn.2d at 454.

Stewart does not challenge the trial court's findings concerning his criminal history, aside from his challenge to the admission of evidence of these prior crimes at the resentencing hearing. Moreover, the record supports the court's finding that Stewart has a history of sexual offenses committed in California, Nebraska, and Colorado.

The record also supports the court's finding that Stewart is not amenable to treatment. The trial court based its finding of lack of amenability upon the following reasons: (1) Stewart has never been comprehensively evaluated to determine amenability; (2) Stewart was asked to participate in such an evaluation for purposes of sentencing but refused; (3) Stewart refused to cooperate in psychological testing in the past; (4) Nebraska and Colorado corrections officials determined Stewart needed treatment but he refused to seek treatment; (5) Stewart has never acknowledged the full extent of his culpability in the charges at issue, nor has he ever admitted sexual motivation; (6) no sexual deviancy treatment program existed at the state penitentiary at which Stewart was housed; and (7) Stewart does not meet the minimum criteria for admission to the sex offender treatment program at Twin Rivers.

■ Stewart contends the trial court violated his Fifth Amendment right to remain silent by finding his refusal to participate in an evaluation rendered him not amenable to treatment. However, as evident, the trial court based its finding that Stewart is not amenable to treatment upon numerous factors, only one of which addresses Stewart's refusal to undergo an evaluation, and each of which is supported by the record. We recognize that in *State v. Pryor,* *supra,* the court stated that before it can find future dangerousness, the trial court must have before it not only a history of similar acts of sexual deviancy, but also the opinion of a mental health professional that the defendant would not likely be amenable to treatment. *State v. Pryor,* 115 Wn.2d at 455. However, in *State v. Miller, supra,* we concluded the Supreme Court did not intend its language in *Pryor* to be read literally so as to preclude a trial court from considering factors other than a professional evaluation:

> For example, a defendant in theory might be a candidate for therapy but would not be "amenable to treatment" if the record establishes that (1) no treatment programs are available; (2) the defendant is ineligible for treatment at all available facilities due, for instance, to prior unsuccessful treatment; (3) the defendant refuses to cooperate with necessary evaluations to determine the usefulness of treatment; or (4) no facility is sufficiently secure to house the defendant during treatment. Circumstances such as these would, in effect, demonstrate that treatment was not available as contemplated by *Pryor*. In sum, if the risk of a defendant's future dangerousness can be minimized or eliminated by available treatment, an exceptional sentence would not be justified. Otherwise, such a sentence would be warranted.

*State v. Miller,* 60 Wn. App. at 919.

Here, the record establishes that the treatment program at Twin Rivers is not available to Stewart because he does not meet the requirements for admission. Specifically, Stewart neither admits his guilt nor has he volunteered for treatment in the program. Further, prior reports prepared by Nebraska and Colorado corrections officials show Stewart's unwillingness to cooperate in mental health treatment programs. Moreover, the court had before it a report prepared in 1973 by a

psychologist at the Nebraska Penal and Correctional Complex which concluded that Stewart's prognosis was poor and that he would be likely to commit violent crimes against persons in the future.[8] Therefore, the trial court did have an opinion of a mental health professional before it when it determined lack of amenability to treatment. This report, coupled with the other factors discussed above, provides ample support for the court's conclusion that Stewart was not amenable to treatment. *State v. Miller*, 60 Wn. App. at 919-20. Accordingly, the court's finding of future dangerousness was supported by the record and justified the exceptional sentence as a matter of law.

C. Clearly too lenient.

The trial court concluded:

> Pursuant to RCW 9.94A.390(2)(g), having found that because of defendant's high offender score, he receives little or no additional punishment for committing multiple crimes while armed with a deadly weapon, the court concludes the operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purposes of the Sentencing Reform Act, as expressed in RCW 9.94A.010.

Stewart does not challenge the factual support for the court's reasons for using the clearly too lenient aggravating factor. Moreover, we find the reasons are supported by the record.

██ Further, the court's reasons justify an exceptional sentence as a matter of law. In order to justify an exceptional sentence under the clearly too lenient factor, the court's written findings must identify "some extraordinarily serious harm or culpability resulting from multiple offenses which

---

[8] The court's consideration of the Nebraska report did not violate the psychologist-patient privilege. RCW 18.83.110. The record does not show Stewart confided in the psychologist for the purpose of treating his ailments. Rather, it appears that the report was prepared for the express purpose of publishing the results in order to aid the corrections officials in their determination of the proper treatment for Stewart. Accordingly, the psychologist-patient privilege did not attach to Stewart's communications. *State v. Post*, 118 Wn.2d 596, 612-13, 826 P.2d 172, 837 P.2d 599 (1992); *State v. Sullivan*, 60 Wn.2d 214, 224, 373 P.2d 474 (1962). Moreover, the record does not reflect that Stewart raised the psychologist-patient privilege before the trial court.

would not otherwise be accounted for in determining the presumptive sentencing range." *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987). The *Fisher* requirement is satisfied if, under the multiple offense policy of RCW 9.94A-.400,[9] a defendant who committed several current offenses would receive the same presumptive sentence even if he committed fewer than all the offenses. *State v. Stephens*, 116 Wn.2d 238, 244-45, 803 P.2d 319 (1991). In *Stephens*, the defendant committed eight burglaries, but would have presumptively received the same sentence if he had committed only two burglaries. The court upheld an exceptional sentence imposed pursuant to RCW 9.94A.390(2)(g) and stated:

> Any other rule would mean that all additional counts, whether 6 (as in this case) or 60, would be free from additional punishment. Such a rule would be against public policy and inconsistent with the stated purposes of the SRA.

*Stephens*, 116 Wn.2d at 245.

Here, the presumptive range for the attempted kidnappings with the deadly weapon enhancement, using Stewart's offender score of 11, is 135.75 to 172.50 months, but the statutory maximum for attempted kidnap is 120 months. Under the multiple offense policy of RCW 9.94A.400, Stewart could be presumptively sentenced to a maximum of only 120 months.[10] If Stewart had committed only one attempted kidnapping with a deadly weapon, the presumptive range would have been 105 to 132.05 months because he had an offender score of 7 due to his prior convictions. Again, the statutory maximum would have been 120 months. So, the longest presumptive sentence Stewart could have received whether he committed one attempted kidnapping with a deadly weapon

---

[9]The statute addresses persons to be sentenced for two or more current offenses and provides in part: "Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(f) or any other provision of RCW 9.94A.390." RCW 9.94A.400(1)(a).

[10]"If the presumptive sentence duration given in the sentencing grid exceeds the statutory maximum sentence for the offense, the statutory maximum sentence shall be the presumptive sentence." RCW 9.94A.420.

or all of the crimes of which he was convicted would be the same and some of the offenses would essentially go unpunished.

■ Stewart contends that, assuming an exceptional sentence is justified under this factor, the sentence should in any event not exceed 172.5 months. He cites no authority for this contention and it is without merit. Whether an exceptional sentence is clearly excessive is determined under an abuse of discretion standard. *Pryor*, 115 Wn.2d at 450. A sentence is clearly excessive if "no reasonable person would impose it." *State v. Creekmore*, 55 Wn. App. 852, 863, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990); *see also State v. Ross*, 71 Wn. App. 556, 569, 861 P.2d 473 (1993). Under the facts of this case, the sentence of 300 months is not an abuse of discretion.[11]

D. Pro se arguments.

■ Stewart claims future dangerousness is an invalid factor because imposing an exceptional sentence on the ground a defendant poses a future danger contravenes the SRA's goal of imposing similar punishments for similar crimes. We disagree. Future dangerousness has been held sufficient as a matter of law to impose an exceptional sentence under the SRA. *See State v. Miller*, 60 Wn. App. at 918 and the cases cited therein. Future dangerousness is appropriately used to justify an exceptional sentence "when a defendant poses a threat to the community 'beyond that which could be ameliorated by incarceration for a period conforming to the standard range.'" *State v. Miller*, 60 Wn. App. at 918 (quoting *State v. Vandervlugt*, 56 Wn. App. 517, 523, 784 P.2d 546

---

[11]Stewart argues that to simply deem the standard range clearly too lenient and then impose a sentence of any length is an abuse of discretion. The trial court did not simply deem the standard range sentence too lenient, but rather deemed the resulting sentence after operation of the multiple offense policy clearly too lenient. Further, affirming the 300-month sentence is not, as Stewart suggests, tantamount to affirming the authority of the trial court to impose an exceptional sentence of any length. Rather, it is simply affirming, under the particular circumstances present here, the court's imposition of the exceptional sentence using the clearly too lenient factor.

(1990)). Future dangerousness is an appropriate factor to consider in sex offense cases.

 Stewart's contention that the trial court erred by failing to treat the VUFA conviction as encompassed within the same criminal conduct as his other convictions was rejected in *Stewart* I.[12] This decision became law of the case and cannot be revisited. *State v. Strauss*, 119 Wn.2d at 412.

 Stewart next contends the trial court erred in imposing the maximum sentence on the VUFA conviction and also running the sentences consecutively based on the court's finding of future dangerousness because it amounts to imposing two exceptional sentences using one aggravating factor, future dangerousness. While Stewart is correct that two exceptional sentences were imposed (statutory maximums and consecutive sentences), he ignores the trial court's use of the clearly too lenient factor as well as the future dangerousness factor to impose two exceptional sentences. Where numerous aggravating factors are present, more than one exceptional sentence may be imposed. *State v. McClure*, 64 Wn. App. 528, 534, 827 P.2d 290 (1992).

Stewart contends the court's use of the clearly too lenient factor was invalid because the court used the factor out of dissatisfaction with the standard sentence range. However, the record shows the trial court used this aggravating factor for the purpose for which it was intended, that is to rectify a sentence that is clearly too lenient because of the SRA's multiple offense policy.

Finally, Stewart contends the trial court erred by imposing community placement. He claims community placement is authorized only where the standard range sentence is less than 1 year. This argument is without merit in light of RCW 9.94A.120(8)(a) which mandates community placement when a person is sentenced for, *inter alia*, a crime against a person where, as here, it is determined in accordance with RCW 9.94A.125 that the defendant was armed

---

[12]*State v. Stewart*, slip op. at 3-4.

with a deadly weapon at the time of commission of the crime.

The decision of the trial court is affirmed.

PEKELIS, A.C.J., and COLEMAN, J., concur.

Review granted at 124 Wn.2d 1008 (1994).