[No. 60782-6.   En Banc.   March 17, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. LLOYD HOWARD McNALLIE, *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *MacDuffie Setter, Chief Criminal Deputy*, for respondent.

DURHAM, J. — Appellant Lloyd McNallie challenges the trial court's use of a finding of non-amenability to treatment to enhance his sentence. McNallie contends that the finding of non-amenability rested solely on his refusal to admit his guilt to a mental health evaluator because of the pendency of his appeal. We accepted certification of this appeal from the Court of Appeals to answer the following question:

Does the trial court's finding of non-amenability impermissibly chill McNallie's right to appeal or his right against self-incrimination?

Order of Certification (Aug. 16, 1993). However, after examining the record, we find that there were adequate objective indications to support the finding of non-amenability without consideration of the contested evaluation. Because this information alone is adequate, we do not reach the constitutional issues, and affirm the trial court.

In May 1990, McNallie was convicted of two counts of communication with a minor for immoral purposes and one count of indecent exposure. The facts underlying that conviction are set out in *State v. McNallie*, 120 Wn.2d 925, 846 P.2d 1358 (1993), where this court upheld McNallie's convictions against his claim that both the underlying statute and the trial court's jury instructions were unconstitutionally vague.

On August 9, 1990, McNallie was given concurrent exceptional sentences of 5 years on each of the communications counts based on a finding of "future dangerousness". The maximum standard range for each conviction was 4 to 12 months. In sentencing McNallie, the court was aware that he had a significant history of misdemeanor sexual misconduct which had not been considered in setting his standard range. The court was also aware that McNallie had been in numerous previous treatment programs and, despite these efforts at treatment, his offending behavior had only escalated. The trial court had the following checkered history to contemplate in deciding on an exceptional sentence:

06/03/77 Misdemeanor convictions — 4 counts of harassing phone calls of an obscene nature.

07/05/77 Felony conviction — indecent liberties (misrepresented himself as a physician to 9-year-old victim, sexually abused child victim). Sentenced to specialized sexual deviancy program at Western State Hospital in lieu of prison.

05/13/82 Misdemeanor conviction — criminal trespass (probably sexually motivated).

10/02/82 Terminated from Western State program because of misdemeanor conviction.

07/05/88   Released from custody on indecent liberties conviction.

11/24/88   Misdemeanor conviction, harassing phone calls of an obscene nature.

06/09/89   Participating in sexual deviancy treatment with Dr. William Coleman.

03/06/90   Committed crimes underlying present charge.

03/30/90   Misdemeanor conviction — public indecency (masturbating in front of hospital employee in hospital parking lot).[1]

Based on the above history, as well as McNallie's dismal record with treatment, the court found he presented a substantial and compelling future danger to the community. Along with imposing an exceptional sentence, the court also asked that the Department of Corrections evaluate McNallie's future amenability to sexual deviancy treatment. On appeal, a commissioner of the Court of Appeals remanded the case for resentencing in light of this court's decision in *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990).

On April 19, 1991, the trial court ordered that McNallie be evaluated by the sexual deviancy program at the Twin Rivers Correction Center. On May 30, 1991, the program director at Twin Rivers found McNallie to be unamenable for treatment. Specifically, she wrote that:

> Mr. McNallie . . . has been found to be unamenable for treatment based on the criteria [*sic*] that he must admit guilt for all current convictions. He is not currently admitting his guilt and is, in fact, appealing the conviction.
>
> He was previously treated for ten (10) years at Western State Hospital's Sexual Psychopath Program. Apparently, this treatment was unfortunately not able to prevent him for [*sic*] recidivating.
>
> On the issue of whether Mr. McNallie needs treatment, it is my opinion that all sex offenders need treatment during their incarceration. Unfortunately, Mr. McNallie is in a double bind situation of needing treatment but not being amenable at this time. Perhaps his situation will be resolved in the future after the court has made its decision.

Clerk's Papers (CP), at 7.

---

[1]There is some confusion in the record as to when this last misdemeanor occurred, although it appears that McNallie committed this offense while out on bail awaiting trial for the conviction underlying this appeal.

On July 25, 1991, the trial court resentenced the defendant and affirmed the exceptional sentence, based on both its earlier findings and Twin Rivers' finding of a lack of amenability to treatment. The court noted that McNallie has had between three and four opportunities to complete a sexual deviancy program and that he voluntarily discontinued his most recent treatment opportunity as soon as his probation expired. Based on his history of offenses, the fact that Twin Rivers had found him unamenable to treatment, and the fact that previous attempts at treatment had all failed, the court concluded that McNallie presents a "certain danger to the community upon his release". CP, at 5. This court accepted certification of the case from the Court of Appeals.

■ Under the Sentencing Reform Act of 1981, a trial court may impose an exceptional sentence only if "there are substantial and compelling reasons justifying an exceptional sentence". RCW 9.94A.120(2). In reviewing such a sentence, this court must determine: (1) whether the reasons for the sentence are supported by the record; (2) whether, as a matter of law, these reasons justify the exceptional sentence; and (3) whether the sentence is clearly excessive or too lenient. *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987); RCW 9.94A.210(4). The appellant here asserts that the trial court relied on an invalid premise for imposing an exceptional sentence.

■ McNallie contends that the basis for the trial court's non-amenability finding was the Twin Rivers evaluation, and that the conclusion contained there was solely based on his refusal to admit guilt and abandon his appeal. He asserts that an exceptional sentence based upon this refusal would violate the Fifth Amendment, as applied to the states through the Fourteenth Amendment, which provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself". U.S. Const. amend. 5. *See Malloy v. Hogan*, 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964). However, "[a] reviewing court should not pass on constitutional matters unless absolutely necessary to its determination of the case". *State v. Ng*, 110 Wn.2d 32, 36-

37, 750 P.2d 632 (1988). After examining the record, we find that the trial court's initial imposition of the exceptional sentence, based on McNallie's previous failed attempts at treatment, was correct. Therefore, there is no need to consider the constitutional issues.

Resolution of this case turns primarily on the proper reading of our decision in *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990). There, we held that a finding of future dangerousness can be a permissible justification for an exceptional sentence for sex offenders. The defendant in *Pryor* had engaged in progressively predatory behavior toward minor females, but had never undergone any type of mental health or sexual deviancy counseling. *Pryor*, at 447. We held that in order to make a finding as to the defendant's future dangerousness, the trial court must find "both criminal history and lack of amenability to treatment . . .". *Pryor*, at 454. However, in *Pryor*, "[t]he record [did] not indicate whether defendant [had] ever been formally evaluated by a medical professional for sexual deviancy". *Pryor*, at 455. Therefore, in remanding the case for further findings, we commented that "[a]t the minimum the trial court must have before it, in addition to a history of similar acts of sexual deviancy, the opinion of a mental health professional that the defendant would likely not be amenable to treatment". *Pryor*, at 455.

We did not intend our decision in *Pryor* to limit the discretion of trial courts to consider a defendant's previous treatment history in determining future dangerousness. The Court of Appeals cases upon which we constructed our future dangerousness requirements in *Pryor* make this clear. For instance, that court had upheld findings of future dangerousness based in part on the defendant's failure to complete or follow through on treatment. *In re George*, 52 Wn. App. 135, 147-48, 758 P.2d 13 (1988); *State v. Shephard*, 53 Wn. App. 194, 201-02, 766 P.2d 467 (1988). Similarly, the use of a prior determination of non-amenability has been found adequate to support a current exceptional sentence. *State v. Wood*, 42 Wn. App. 78, 82, 709 P.2d

1209 (1985), *review denied*, 105 Wn.2d 1010 (1986). Our decision in *Pryor* grew out of cases such as these, and was intended to substantiate their reasoning.

▮ Appellate decisions after *Pryor* also show that, for the most part, courts have understood that while competent professional indications are necessary for a finding of non-amenability, proof is not limited to evaluations concurrent with sentencing. *See, e.g., State v. Post,* 118 Wn.2d 596, 602, 826 P.2d 172, 837 P.2d 599 (1992) (upholding use of psychologist's evaluation based on interview conducted 8 years prior to conviction); *State v. DeMara,* 62 Wn. App. 23, 26-30, 812 P.2d 898 (1991) (upholding future dangerousness finding based in part on evaluations conducted 2 and 3 years before present conviction). An actual therapist's report indicating non-amenability is not necessary if there are other objective indications showing that the defendant is not a likely candidate for successful rehabilitation. For instance, a therapist's action in terminating treatment because of a current offense is tantamount to an express statement by the therapist that the defendant is not amenable to treatment. An even stronger indication is the mere commission of a sex offense while the defendant is in treatment or soon thereafter. It is difficult to conceive of more reliable objective evidence of lack of amenability to treatment and future dangerousness than the fact that, despite being in treatment, the defendant continues to engage in the very criminal behavior for which he or she is being treated.

Our purpose in requiring objective evidence regarding amenability to treatment is not to provide defendants with unlimited bites at the treatment apple. *See State v. Miller,* 60 Wn. App. 914, 919, 808 P.2d 186 (1991). Courts faced with a prior history of failed attempts at therapy are free to consider this history in deciding on the defendant's current prognosis for rehabilitation. When that prognosis is poor, based on the failure of previous treatment attempts as shown by offenses occurring during treatment or soon thereafter, exceptionally long sentences are justified in order to protect the public from

a defendant who is likely to reoffend.[2] Nevertheless, in cases where there is no such treatment history, or there has been a very long period of offense-free behavior following therapy, an exceptional sentence cannot be sustained without "the opinion of a mental health professional that the defendant would likely not be amenable to treatment". *Pryor*, 115 Wn.2d at 455. *See also State v. Strauss*, 119 Wn.2d 401, 420-21, 832 P.2d 78 (1992) (requiring mental health care professional's opinion in absence of prior record of treatment); *Miller*, at 919-20 (requiring professional's opinion when course of treatment predated offense by 10 years).

Here, the trial court had before it a continuous pattern of offenses and attempts at treatment, which were followed only by new and more predatory offenses. These previous failures at treatment provided a sufficiently objective basis for the trial court to conclude that McNallie "would *likely* not be amenable to treatment". (Italics ours.) *Strauss*, at 420. The ineffectiveness of McNallie's previous bouts of therapy gave the trial court ample objective evidence of non-amenability even without the Twin Rivers evaluation. As is clear from the original sentencing, the Twin Rivers evaluation did nothing but solidify the trial court's initial impression. We hold that the evidence of McNallie's treatment history, coupled with offenses which occurred during the period of treatment or soon thereafter, was adequate alone to support the finding of non-amenability. Therefore, we affirm the exceptional sentence imposed by the trial court.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

---

[2] However, just because a defendant is a poor candidate for rehabilitative treatment does not mean that such treatment should not be attempted. Here, the trial court correctly imposed a longer sentence, while also requesting that treatment be considered.