[No. 29890-9-I.    Division One.    April 12, 1993.]

PAUL M. JANOS, *Appellant,* v. THE UNIVERSITY
OF WASHINGTON, ET AL, *Respondents.*

*Paul M. Janos,* pro se, and *Kenneth McDonald,* for appellant.

*Mark Green,* for respondents.

SCHOLFIELD, J. — Appellant Paul M. Janos appeals from the trial court judgment affirming the final decision of respondent University of Washington that he shall remain an unsalaried faculty member pending a recommendation by the Department of Psychology on renewal or nonrenewal of his appointment. We affirm.

Paul Janos began at the University of Washington in 1980 as a clinical psychology intern in the medical school. During that year, Janos became associated with the Child Development Resource Group (CDRG) where he began work with group founder Dr. Halbert Robinson, in the Early Entrance Program (EEP), a program within the CDRG. At the time of Janos' hire, the CDRG was an interdepartmental research organization under the auspices of the graduate school and

encompassed a number of programs focusing on research with gifted children and youth.

The EEP was founded in 1977 by Dr. Halbert Robinson to provide an opportunity for gifted young students to enroll at the University. Dr. Halbert Robinson died in 1981, and his wife, Dr. Nancy Robinson, professor of psychiatry and behavioral sciences, assumed the position of director of CDRG.

In 1981, Janos was hired as a research consultant by the CDRG to work with the EEP on a 3-year grant from the Donner Foundation. He continued to work on this grant while completing his dissertation. In 1983, following receipt of his Ph.D., Janos was appointed to the rank of research associate in the CDRG.

In 1984, the budgets and activities of the CDRG were transferred from the graduate school to the College of Arts and Sciences. However, the "identity" of the CDRG was retained under the graduate school. The name of the CDRG was also changed to the Center for the Study of Capable Youth (CSCY) sometime during the mid-1980's, although the precise date of this change is not clear.

In July 1986, Robinson wrote Dr. Gary Tucker, chair of the Department of Psychiatry and Behavioral Sciences, to nominate Janos for an academic appointment in that department. She wrote as follows regarding Janos' duties and funding:

> Paul is the Assistant Director of the Early Entrance Program and serves functionally as half-time counselor for current "EEPers," graduates of the program, and other young students on the campus. Through this self-sustaining program, 50% of his salary is guaranteed on a permanent basis. . . .
>
> The remainder of Paul's time has, since 1981, been covered by research grants. Initially, we had a three-year grant from the Donner Foundation to evaluate the [EEP] . . . More recently, and to about November 1, 1987, Paul has 50% of his salary from our NIMH grant to study the effects on a nongifted child of having a gifted sibling. . . .
>
> . . . .
> Paul has been appointed as a Research Associate by the Child Development Research Group, under the auspices of the Graduate School, since 1981,[1] but that type of appointment is

---

[1] This statement is incorrect. The record indicates that Janos was not formally appointed to the rank of research associate in CSCY until 1983.

no longer going to be available. The Graduate School has been regularizing its administrative structure, and Groups (or Centers) can no longer make such appointments. We need to make some change in Paul's status soon . . .[.]

In April 1987, Robinson wrote the chairman of the Department of Psychology to request that Janos be considered for an appointment to research associate in that department. Robinson stated that her request "comes as a result of a transfer of the functions of the Center for the Study of Capable Youth from the Graduate School to the College of Arts and Sciences, and therefore the need to transfer Paul's appointment." Robinson described Janos' functions in the CSCY:

While he finished his dissertation, he became involved with research relating to the Early Entrance Program, and later became the Assistant Director of the Early Entrance Program, dually supported by the EEP as its adviser, and by a series of research projects . . .[.]

An *ad hoc* committee within the Department of Psychology reviewed Janos' accomplishments and his appointment was approved by faculty vote. In recommending Janos' appointment, the chair of the Department of Psychology wrote:

I have made it clear to [Janos] that he is free to continue his activities with Professor Robinson's group, and that if he wishes to expand the scope of his activities to other, more independent arenas, he will first have to interact with the regular faculty in the department to a greater degree than at present.

Janos' appointment was approved by Associate Dean David Prins on July 17, 1987. The record indicates this was not a *new* appointment, but was rather a *transfer* of Janos' research associate appointment from the CSCY to the Department of Psychology.

As Janos concedes, his appointment to the Department of Psychology was silent regarding his duties and his funding. Following the appointment, Janos continued to have significant responsibilities with the CSCY, as evidenced by CSCY Director Robinson's letter to Janos of August 29, 1987.[2]

---

[2]In part, Robinson's letter stated:

At the end of 1988, Janos remained employed as an "Assistant Director, Early Entrance Program" with the CSCY. Janos' position as assistant director was funded by the CSCY, and he received no funding from the Department of Psychology.

By late 1985, friction had begun to develop between Robinson and Janos. Janos developed differences of opinion with Robinson regarding the operation of the EEP. By the end of 1988, the relationship between Janos and Robinson had significantly deteriorated. In a February 13, 1989, letter Robinson notified Janos of his termination from the CSCY, citing the "increasingly difficult working relationships between the two of us and with other Center personnel". Robinson's letter stated that Janos was terminated from his position as assistant director of the CSCY and from his "appointment as Research Associate to the Center".

---

"Morton Kroll has suggested that I write down for both our benefits a list of what I see as the basic expectations of your continuing role within the Center for the Study of Capable Youth. . . .

". . . .

". . . I probably don't have to reiterate your multiple responsibilities as Assistant Director for the Early Entrance Program, but here is a list of some of them:

"(1) Suggesting to me, and from time to time to the Board, overall policy for the Early Entrance Program. . . .

"(2) Maintaining contact with the full-time students with regard to academic advisement . . .

"(3) Conducting the weekly meetings for the EEP'ers in their first full-time year.

". . . .

"(5) Maintaining contact with other University offices such as the honors program, the registrar's office, and so forth . . .

"(6) Attending Transition School faculty meetings frequently enough to be informed about the students who will be entering the EEP the next year . . .

". . . .

"(8) Continuing to participate in selection of new students.

". . . .

"(10) General trouble-shooting.

"(11) Letting me know what is going on, both in our weekly meetings and other occasions as need arises . . .

"(12) Whatever else I have omitted from this list that is in the spirit of your position."

Robinson further encouraged Janos to "begin to prepare your own research proposals to fund a significant part of your career within the Center."

Janos initiated adjudicative proceedings pursuant to the University's *Faculty Handbook* (Code) to challenge his termination. These proceedings ultimately involved a hearing committee decision, an appeal to University President Gerberding, a remand and second decision by the hearing committee, and a final decision by Gerberding. The general issue was whether Janos was entitled to the protections of the Code prior to termination. Gerberding made several determinations regarding Janos' employment status which are relevant to this issue: (1) Janos held an unsalaried, unfunded faculty appointment as a research associate with the Department of Psychology; (2) Janos held no faculty appointment as research associate with the CSCY, but instead held the administrative position of assistant director of the CSCY; and (3) Janos' funding was through the CSCY.

From the above findings, Gerberding concluded that it was within Robinson's discretion to terminate Janos as assistant director of the CSCY, and that his funding through the CSCY could be revoked when his work there was discontinued. He stated that the protections of the University Code did not apply to the discontinuation of administrative funding for persons not in a faculty position. However, Gerberding ruled that proper University Code procedures had to be followed before Janos could be terminated from his faculty appointment with the Department of Psychology. Because such procedures had not been followed, Gerberding stated that Janos remained an unsalaried, unfunded faculty member with the Department of Psychology. Gerberding ruled that Janos shall remain a faculty member "pending a recommendation by the faculty of the Department of Psychology to Dean Norman on renewal or non-renewal of his appointment."

The University contends that following Gerberding's decision, the tenured members of the Department of Psychology voted 26 to 0 to recommend that Janos not be reappointed as a research associate.

Janos petitioned for judicial review of Gerberding's decision. Following review, the trial court affirmed the decision

in a detailed 7-page decision. Janos' motion for reconsideration was subsequently denied, and he brought this appeal.

■ ■ Review of this case is governed by former RCW 28B.19.150,[3] which in pertinent part states:

> (6) The court may affirm the decision appealed from, or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (a) In violation of any state or federal constitutional provision; or
>
> (b) In excess of the statutory authority or jurisdiction of the institution; or
>
> (c) Made upon unlawful procedure; or
>
> (d) Affected by other error of law; or
>
> (e) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
>
> (f) Arbitrary or capricious.

Former RCW 28B.19.150(6). This court's review is limited to the record before the administrative agency, which in this case is the University. *See Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). In reviewing an administrative agency's conclusions of law, this court applies the "error of law" standard. *See Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991).[4] The court gives substantial weight to the agency's interpretation of the law, although it may substitute its judgment for that of the agency. *Haley*, at 728.

An agency's factual findings are reviewed under the "clearly erroneous" standard. *See Franklin Cy.*, at 324. Under this standard, a finding is clearly erroneous when although there

---

[3]RCW 28B.19 was repealed effective July 1, 1989, and review proceedings are currently governed under RCW 34.05. *See* RCW 34.05.902. However, because this action was commenced in March 1989 when Janos filed his request for faculty adjudication, former RCW 28B.19 is applicable in this case. *See* RCW 34.05.902.

[4]The *Haley* court stated this rule in the context of interpreting former RCW 34.04.130(6). However, because the review standards set forth in former RCW 28B.19.150(6) are identical to those in former RCW 34.04.130(6), the *Haley* court's language would apply to interpretations of former RCW 28B.19.150(6) as well.

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76, 83, 795 P.2d 1184 (1990), *review denied*, 116 Wn.2d 1005 (1991).

Janos asserts that this court must determine the plain meaning of his appointment to research associate within the former CDRG and the transfer of that appointment to the Department of Psychology. He believes Gerberding erroneously categorized him as an administrative employee at the CSCY. He asserts he was a funded faculty member in the Department of Psychology, and only that department could take steps to reduce his salary. He claims he was not an at-will employee subject to dismissal.

The University contends that Gerberding's finding that Janos functionally held an administrative post at the CSCY is supported by the record. It claims that as an administrator, Janos served at the pleasure of his superior (Robinson) and was subject to termination from his duties and his administrative budget salary. It claims that University Code sections 28-31A and 28-31E, which govern adjudicative proceedings, do not apply to removal from administrative functions. The University claims Janos was entitled to and did retain his unfunded faculty post as a research associate with the Department of Psychology.

The issue of whether Janos functioned in an administrative capacity at the CSCY is factual and will be upheld unless "clearly erroneous". Whether he could be summarily terminated from his position at the CSCY involves an application of the University Code and is reviewed under the "error of law" standard.

Throughout much of his career with CSCY, Janos described himself as "assistant director" of the EEP. Although he is not listed as "Administrative Staff" in a 1988 staff configuration for CSCY, he is listed under the title of "Assistant Director, Early Entrance Program". The University Code supports respondents' claim that this is an administrative position.[5]

---

[5]It is clear that *Robinson* occupied an administrative position as "director" of CSCY. University Code § 12-28(I) states in part that "[i]t is the policy of the

The record also supports a finding that Janos' duties at CSCY were administrative in nature. As of June 1987, Robinson wrote that Janos was spending 75 percent of his time in

> academic advising, personal advising, conduct of the first-year EEP group and supervision of its research project, facilitating group activities for the larger group, follow-up of graduates, interfacing with departments, facilitating students' contacts with mentors and developmental employment (e.g. labs), interfacing with Transition School . . ., dealing with media and general inquiries, assisting with selection, and so on.

The remainder of Janos' time appears to have been spent in research projects supported by grant funds.

However, the December 1988 staff configuration indicates that Janos' sole source of support was "Early Entrance Program Support . . . 75%". The configuration does not indicate that Janos was receiving any research grant money at that time. In other words, as the University contends, only Janos' administrative functions were being funded. Based on the above facts, it was not clearly erroneous for Gerberding to find that Janos was an administrator with the CSCY.

■ The next question concerns whether Robinson properly terminated Janos from his position with the CSCY. University Code § 12-28(I) states in part that

> [n]o administrative position is tenured and the President and the Board of Regents reserve the right to appoint, continue, or terminate any administrator.

While "principal" administrators are entitled to periodic review, *see* Code §§ 12-28(I), (III), Janos concedes he was not a principal administrator in the CSCY. We do not interpret the Code as giving lesser administrators, such as Janos, the right to periodic review:

> E. Vice presidents and other principal administrative *aides* to the President, associate deans, and other principal admin-

---

University to attract and retain qualified individuals to serve in principal *administrative positions* . . . Such positions include . . . *directors of* . . . major institutes and centers . . .". (Italics ours.) If Robinson's position as "director" is regarded as administrative, then it would stand to reason that Janos, the "assistant director", would hold an administrative position as well.

istrative aides to deans, are not considered as autonomous administrators but as adjuncts to the office respectively of the President or of the dean. *The President and deans are free to use whatever procedures they deem desirable in reaching recommendations concerning such appointees within their own offices.*

(Italics ours.) University Code § 12-28(II)(E).

In claiming that Robinson had no authority to terminate him, Janos emphasizes that the budgets and activities of the CSCY were transferred from the graduate school to the College of Arts and Sciences in 1984, and that his appointment was transferred to the Department of Psychology in 1987. We fail to see the significance of these events. It was Janos' administrative position as assistant director of the CSCY that was terminated, not his faculty post. Because Janos' funding was for his position at the CSCY, this funding necessarily ended with his termination.

Janos next contends the review provisions of University Code sections 28-31(A) and (E) applied in this case. The University claims Janos received all the process due him under Code sections 28-31(A) and (E).

Code section 28-31(A) governs "[c]ases in which an authorized University official initiates action on behalf of the University to effect the removal (or reduction in salary) for cause . . . (3) of an untenured faculty member before the end of the term for which the faculty member holds appointment."

The University concedes that Robinson had no authority to remove Janos from his faculty appointment in the Department of Psychology, but notes that Janos received the relief sought — reinstatement to his position there. Janos counters that because the budget and activities relating to him had been transferred to the College of Arts and Sciences, Robinson had no authority to reduce his salary under section 28-31(A).

As we previously noted, we do not view the budget transfer as being particularly significant. Janos did not hold the rank of "untenured faculty member" (*see* § 28-31(A)) within the CSCY, but was instead an administrator. He suffered a

"reduction in salary" (§ 28-31(A)), but only in his administrative position; he lost no salary from his faculty-member position in the Department of Psychology because that position was not funded. In short, section 28-31(A) has no application here. Robinson clearly had the authority to terminate Janos from his administrative position, which was his sole source of funding.

Section 28-31(E) of the University Code governs

[c]ases (other than those arising under Paragraphs A through D of this section) where a faculty member alleges an injustice resulting from decisions, actions, or inactions of any person(s) acting on behalf of the University in an administrative capacity and affecting the terms, conditions, or course of employment of the faculty member by the University.

Janos' argument under section 28-31(E) appears to be that Robinson's termination of his administrative position affected his faculty appointment. He also claims he had a faculty complaint against Robinson that has not been settled.

Janos has not demonstrated that his faculty position was not renewed due to an alleged unjust act by Robinson. There is no evidence that Janos actively sought reappointment as a research associate in the Department of Psychology following his termination, and therefore it cannot be concluded that any "injustice" by Robinson was the reason Janos lost his faculty position. The trial court correctly observed that "Dr. Janos did not make any good faith effort to urge the Department of Psychology to continue his nonfunded appointment to enable him to have time to pursue research opportunities now that his administrative duties were over."

For the first time in his reply brief, Janos claimed that Gerberding erred in (1) failing to follow University Code section 28-71(C), (2) failing to state why the hearing committee's action was arbitrary and capricious, and (3) relying on an uncited portion of the Code. We need not consider these alleged errors as they were raised for the first time in Janos' reply brief. *See In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). We do note that Gerberding specifically

stated that the remand was because the committee's decision was " 'arbitrary and capricious' " in the sense that it was "incorrect under University regulations, protocols and the facts regarding Dr. Janos' employment status at the University." This would appear to be in substantial conformance with Code section 28-71(C).[6]

We have carefully considered all of Janos' arguments and find them to be without merit. The judgment is affirmed.

WEBSTER, C.J., and BAKER, J., concur.

Review denied at 122 Wn.2d 1007 (1993).

---

[6]This provision states in part that "If as a result of the procedures described in Section 28-71(A) the President concludes that the decision of the Committee was arbitrary or capricious; or the procedures followed by the Committee in reaching its decision were materially and prejudicially unfair or not in accordance with the law or University rules, regulations, or practices; . . . then the President shall remand the case back to the Committee."