[No. 31600-1-I. Division One. March 28, 1994.]

*In the Matter of the Personal Restraint of* LEIGHTON CLARK RAMA, *Petitioner.*

504

BECKER, J., concurs by separate opinion.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

PEKELIS, A.C.J. — Leighton Rama challenges the appropriateness of the sentencing court's reliance on future dangerousness in imposing an exceptional sentence. He contends that future dangerousness cannot be used to justify his exceptional sentence because, under *State v. Barnes,* 117 Wn.2d 701, 818 P.2d 1088 (1991), the offenses he committed were not sex offenses. He also contends that the evidence was insufficient to support a finding of future dangerousness under *State v. Pryor,* 115 Wn.2d 445, 799 P.2d 244 (1990), because there is no proof of nonamenability to treatment. Because the record lacks adequate evidence of Rama's nonamenability to treatment, we grant Rama's petition and remand.

I

In 1987, Leighton Rama pleaded guilty to five counts of burglary in the first degree, two counts of burglary in the second degree, and one count of attempted burglary in the second degree. These charges were based on a series of incidents, occurring over a 17-month time period during 1985 and 1986, in which Rama entered the homes of single women

and exposed his penis. On some of these occasions Rama also threatened the women, touched their breasts or demanded to see their breasts, forced the women to touch his penis or demanded that they touch his penis, and masturbated his exposed penis. The plea agreement permitted the sentencing judge to consider the Certification of Probable Cause, which set forth the sexual nature of Rama's crimes in great detail.[1]

The maximum standard range sentence that Rama could have received for these charges was 116 months. The sentencing court imposed an exceptional sentence based on the following findings of fact and conclusions of law:

### I. Findings of Fact

1) The defendant engaged in a regular pattern of despicable conduct, as reflected in the charges, that he is unable to control. He is an uncontrollable exhibitionist.

2) The Burglary in the First Degree charges include sexual assaults which are impermissible and shocking.

3) Two young victims in Count #1 were especially vulnerable because they were babysitters. They were responsible for the care and safety of others they could not leave or abandon and had no opportunity to escape or respond.

### II. Conclusions of Law

The standard range is clearly inadequate in light of the purposes of the Sentencing Reform Act in two ways:

1) The conduct of the defendant was more serious than that contemplated in the "typical" Burglary in the first degree, both because of victim vulnerability and the nature of the assaults in the residence being sexual in nature.

2) The court has a duty under the Sentencing Reform Act to protect the public. The defendant presents a clear continuing danger to the public and the standard range is inadequate protection.

On May 29, 1987, Rama received an exceptional sentence of 144 months.

Rama appealed his sentence. This court determined that finding of fact 1 was supported by the evidence, characterizing the finding as "a finding that Rama is 'untreatable' ". *State v. Rama,* unpublished opinion noted at 54 Wn. App.

---

[1]The relevant portions of the Certification of Probable Cause are fully set forth in this court's opinion on Rama's direct appeal, *State v. Rama,* cause 20611-7-I (June 5, 1989) (*Rama* I) (unpublished).

1044 (1989) (*Rama* I), slip op. at 6.[2] As for the trial court's conclusion that "Rama presents a clear and continuing danger to the public", the court noted that

> Rama . . . has a lifelong history of sexual deviancy. He has been treated for this problem at least twice; once in the mid 1950's and once in the mid 1970's. From this information, the trial court could determine that, although treatment does help Rama, such help is only temporary.

*Rama* I, slip op. at 7-8. For that reason, together with Rama's history of similar acts, the court concluded that future dangerousness was an appropriate reason for sentence enhancement. Although the remaining justifications for Rama's exceptional sentence were invalidated, the court upheld the sentence, determining "that the trial court would impose the same sentence even if it only considered . . . future dangerousness". *Rama* I, slip op. at 11.

Rama's personal restraint petition challenges the trial court's use of future dangerousness as a justification for his exceptional sentence. He contends that the intervening decisions in *Barnes* and *Pryor* establish that his exceptional sentence was not authorized by law and thus that his restraint is unlawful.[3]

## II

Under *Barnes*, courts may not consider future dangerousness as a factor in sentencing for nonsexual offenses. Rama argues that because none of his crimes were sex offenses as defined in RCW 9.94A.030(29), future dangerousness does not support imposition of an exceptional sentence.

---

[2]The court also noted that "[i]n his oral decision, the trial judge stated that Rama is 'untreatable' and 'unable to control his behavior' ". *Rama* I, slip op. at 6 n.2.

[3]In *In re Vandervlugt*, 120 Wn.2d 427, 842 P.2d 950 (1992), the Supreme Court held that, because *Pryor* and *Barnes* reflect significant intervening changes in the law, review of an exceptional sentence by way of personal restraint petition is available even though petitioner has already directly appealed the future dangerousness finding. 120 Wn.2d at 431-35. Hence, the State's concession that RAP 16.4(d) permits the petition in this case is appropriate. Rama must still, of course, demonstrate that sufficient reasons exist for applying the changed standards of *Pryor* and *Barnes* to his case.

■■ This issue was recently decided by this court in *State v. Stewart*, 72 Wn. App. 885, 866 P.2d 677 (1994). Noting that the *Barnes* opinion did not cite the SRA's (Sentencing Reform Act of 1981) definition section when referring to "'sexual offense cases . . .'", the *Stewart* court determined that "nothing in *Barnes* compels the conclusion that future dangerousness may be applied only to those offenses defined as sex offenses in the SRA." *Stewart*, at 895. Hence, the *Stewart* court held that, for purposes of determining whether an offense is a sexual offense and whether future dangerousness may be considered as an aggravating factor at sentencing, "a court is not restricted to the SRA's definition of sex offense." *Stewart*, at 895. The court articulated the applicable rule as follows:

> [T]he court should look at the defendant's acts in committing the crime and determine, from a commonsense perspective, whether the offense is capable of treatment as a sexual offense. If it is, future dangerousness may be considered as an aggravating factor.

*Stewart*, at 895.[4]

There is no dispute here that Rama's crimes were sexually motivated. Rama in fact concedes this point, observing that "[t]he circumstances in my case would indicate that the crimes were sexually motivated, even though I was not charged with a sexual offence [*sic*]." Moreover, in deciding Rama's direct appeal, this court observed that "[t]he assault involved here was sexual in nature." *Rama* I, slip op. at 8. And unchallenged findings of the trial court state that "[t]he Burglary in the First Degree charges include sexual assaults" and that "the nature of the assaults in the residence [was] sexual in nature." *Rama* I, slip op. at 6.

Clearly, from a commonsense perspective, Rama's offenses were committed entirely for the purpose of sexual gratification and hence are properly characterized as sexual offenses. Thus, despite *Barnes*, the trial court did not err in

---

[4]Our holding, like that of *Stewart*, is necessarily limited to prosecutions that preceded July 1, 1990, the date the sexual motivation statute, RCW 9.94A.127, went into effect. *see* Laws of 1990, ch. 3, § 606(1).

considering Rama's future dangerousness, and we reject this aspect of Rama's challenge.[5]

## III

Next, Rama contends that, in any event, the finding of future dangerousness does not satisfy *State v. Pryor, supra.* In *Pryor,* the Supreme Court held that a finding of future dangerousness in a sexual offense case must be supported by findings that the defendant has committed similar criminal acts and that the defendant is not amenable to treatment. 115 Wn.2d at 454. The court noted that, at a minimum, the finding of lack of amenability to treatment must be based on the expert testimony of a mental health professional. 115 Wn.2d at 454-55; *State v. Strauss,* 119 Wn.2d 401, 420, 832 P.2d 78 (1992) ("court must have before it the opinion of a mental health professional that the defendant would likely not be amenable to treatment") (citing *Pryor*).

Rama does not contest the finding that he had committed similar criminal acts. He argues only that the finding of future dangerousness was inadequate because there was no expert testimony establishing his nonamenability to treatment.

The State concedes that "no such [expert] opinion was before the sentencing court", but contends that under *State v. Miller,* 60 Wn. App. 914, 808 P.2d 186 (1991), "a trial court might also consider several other factors". The *Miller* court observed that "[t]he obvious aim of the *Pryor* court was to require some form of objective verification of a defendant's future dangerousness." 60 Wn. App. at 919.

---

[5]In a reply brief, defense counsel argues for the first time that if sexually motivated crimes other than defined sex offenses can subject a defendant to an enhanced sentence, then Rama's sentence violated the real facts doctrine because the State could have charged Rama with indecent liberties. This allusion to the real facts doctrine, without citation to authority, is insufficient to warrant appellate review. *see Janos v. UW,* 69 Wn. App. 799, 809, 851 P.2d 683 (court need not consider alleged errors raised for first time in reply brief), *review denied,* 122 Wn.2d 1007 (1993); *Mairs v. Department of Licensing,* 70 Wn. App. 541, 544, 854 P.2d 665 (1993) (per curiam) (appellate court need not decide an argument that is not supported by citation to authority).

Hence, even though the literal language of *Pryor* requires a professional evaluation of amenability to treatment, the *Miller* court determined that *Pryor* does not preclude a trial court from "considering other critical factors". 60 Wn. App. at 919.

> For example, a defendant in theory might be a candidate for therapy but would not be "amenable to treatment" if the record establishes that (1) no treatment programs are available; (2) the defendant is ineligible for treatment at all available facilities due, for instance, to prior unsuccessful treatment; (3) the defendant refuses to cooperate with necessary evaluations to determine the usefulness of treatment; or (4) no facility is sufficiently secure to house the defendant during treatment. Circumstances such as these would, in effect, demonstrate that treatment was not available as contemplated by *Pryor*.

60 Wn. App. at 919.

However, in *Miller*, the Court of Appeals reversed the trial court's future dangerousness finding. There, the defendant "'underwent 26 months of sexual deviancy treatment at Western State Hospital and was on the outpatient program for 18 months'." Because the defendant then reoffended, the trial court concluded that the treatment " 'clearly . . . was not effective with the defendant . . .' " and imposed an exceptional sentence based on future dangerousness. 60 Wn. App. at 917. The Court of Appeals disagreed, ruling that this evidence "is insufficient to show that [defendant] was not amenable to treatment":

> The record has no information about whether an appropriate treatment program was available for [defendant] or whether he would be eligible for such treatment. Likewise, nothing in the record indicates whether [defendant's] treatment following the 1974 conviction was successful or whether he currently is responsive to treatment, as *Pryor* requires. It is possible, perhaps probable, that a mental health professional would conclude that [defendant] would not benefit from therapy because he [committed the current offense] after receiving 26 months of sexual deviancy treatment. However, no testimony was presented that would permit such a determination.

60 Wn. App. at 919-20.

In the present case, information available at sentencing revealed that Rama underwent treatment and therapy in

Florida and Wisconsin during the 1950's and 1960's, apparently in connection with arrests for criminal trespass, disorderly conduct, and lewdness. He was arrested in Seattle in 1972 for several assaults that were "quite similar to his current offense although they were considerabl[y] more violent". Following his guilty plea to two counts of assault in the second degree with a deadly weapon, Rama was granted a 10-year suspended sentence and committed to the sexual psychopath program at Western State Hospital. Dr. Richard Jarvis, who treated Rama at the time, observed that

> there is no doubt in my mind that he suffers from a form of psycho neurosis which predisposes him to the commission of sexual offenses.

Rama was released from Western State in July 1974, and the State concedes that "[t]he Department of Corrections records indicate that he successfully completed this program". Rama was arrested in New York in 1979 and charged with sexual abuse based on an incident in which Rama grabbed a woman's breasts.

Based on this evidence, together with the charges in the instant matter, the trial court deemed Rama "untreatable". In response to Rama's personal restraint petition, the State argues that, despite a longstanding history of sexual deviancy treatment, Rama has continued to commit "sexually deviant crimes", thus demonstrating "that treatment is not available as contemplated in *Pryor*".

The State's argument requires an inference that this court was unwilling to draw in *Miller*: because defendant committed another sexual offense after receiving sexual deviancy treatment for earlier offenses, he would not benefit from treatment now. While the *Miller* court acknowledged that certain facts might stand in place of the literal language of *Pryor*, which requires a professional evaluation of amenability to treatment, it expressly declined to substitute the foregoing inference for such evidence.

The evidence here is no better. Like the defendant in *Miller*, Rama underwent treatment and subsequently reoffended. As in *Miller*, the record has no information about whether an

appropriate treatment program is available for Rama or whether he would be eligible for such treatment. As in *Miller*, nothing in the record indicates whether Rama *currently* is or is not responsive to treatment, "as *Pryor* requires". 60 Wn. App. at 920. Unlike *Miller*, but further reinforcing the conclusion that *Pryor* has not been satisfied, the record here affirmatively demonstrates that, following Rama's 1973 convictions, he "successfully completed" sexual deviancy treatment.

We conclude that the finding of future dangerousness was not supported by objective evidence of a lack of amenability to treatment.[6] Therefore, the exceptional sentence was contrary to the dictates of *Pryor*, and Rama is entitled to relief. Given the long period since Rama's initial sentencing, it would be pointless for the sentencing court now to engage in additional factfinding on the issue of whether Rama was, in 1987, likely amenable to treatment. Hence, we remand for imposition of a sentence within the standard range.[7]

SCHOLFIELD, J., concurs.

BECKER, J. (concurring) — I agree that we should remand for sentencing within the standard range. However, I would

---

[6]In a recently filed opinion, *State v. McNallie*, 123 Wn.2d 585, 870 P.2d 295 (1994), the Supreme Court opined that proof of nonamenability is not necessarily limited to a therapist's evaluation concurrent with sentencing, and that the sentencing court may consider "other objective indications showing that the defendant is not a likely candidate for successful rehabilitation." *McNallie*, at 591. In *McNallie*, there was evidence of defendant's prior failed attempts at therapy, as well as offenses committed during periods of treatment or soon thereafter. Ruling that sentencing courts are free to consider "a prior history of failed attempts at therapy", the Supreme Court held that this evidence "was adequate alone to support the finding of non-amenability." *McNallie*, at 591, 592.

Here, however, Rama has no "prior history of failed attempts at therapy", nor did he commit his offenses during or soon after his treatment. Thus, *McNallie*'s clarification of *Pryor* does not apply.

[7]Rama asserts that as of August 1993 his "total of served time, good time and earned time" exceeded the maximum standard range sentence applicable to his convictions. The record is insufficient to permit us to evaluate the accuracy of this claim. However, if Rama is able to establish this before the sentencing court, then he is entitled to immediate release.

grant relief on the basis that neither *State v. Barnes,* 117 Wn.2d 701, 818 P.2d 1088 (1991) nor the Sentencing Reform Act of 1981 (SRA) provides us with the authority to redefine Rama as a "sex offender" in order to justify his exceptional sentence.

In *Barnes,* the Supreme Court held that because of distinctions drawn in the SRA between sexual and nonsexual offenses, future dangerousness can aggravate a sentence for a sexual offense but not for a nonsexual offense. *Barnes* did not decide whether a burglary committed with sexual motivation could be classified as a sexual offense. That question is now before us.

Neither the SRA nor the criminal code defines burglary as a sex offense. The majority nevertheless concludes that Rama "from a commonsense perspective" is a sex offender. This "common sense" test, which derives from *State v. Stewart,* 72 Wn. App. 885, 895, 866 P.2d 677 (1994), is the product of *Stewart's* expansive reading of *Barnes* and *Barnes*'s expansive interpretation of the SRA's alternative sentencing provision for sex offenders. *Stewart,* at 895, states that "nothing in *Barnes* compels the conclusion that future dangerousness may be applied only to those offenses defined as sex offenses in the SRA." *Stewart* concludes that an offense is sexual for future dangerousness purposes if the defendant's acts in committing the crime, viewed from a "commonsense perspective", make the offense "capable of treatment as a sexual offense". *Stewart,* at 895. *Barnes* is questionable authority for this proposition. The majority in *Barnes* refused to expand, without legislative guidance, the use of future dangerousness as an aggravating factor. This alone should make us reluctant to construe the term "sex offense" broadly.

Further, *Barnes* warned that future dangerousness is an inherently suspect factor because it "punishes an offender for a crime which the State has neither charged nor proven[.]" *Barnes,* 117 Wn.2d at 707; *see* RCW 9.94A.370(2); *see also* David Boerner, *Sentencing in Washington* 9-18 (1985). Rama

was neither charged nor convicted as a sex offender and had no opportunity to defend against an allegation that he was a sex offender. Future dangerousness should therefore be rejected as an enhancement factor in his case just as it was in *State v. Ross*, 71 Wn. App. 556, 861 P.2d 473 (1993). In *Ross*, "although there were alleged sexual elements of crimes involved, the State either did not prove them or dismissed the charges." *Ross*, at 567.

Fundamentally, both *Stewart* and *Barnes* rely on a rehabilitative rationale to support their use of future dangerousness for sex offenders. *see Barnes*, 117 Wn.2d at 708-11; *Stewart*, at 895; *see also Barnes*, 117 Wn.2d at 713 (Guy, J., concurring) ("[t]he future dangerousness finding is partially a clinical-rehabilitative determination"). As the Supreme Court stated in summarizing the holding of *Barnes*:

> Because the Legislature specifically authorized courts to consider a sexual offender's amenability to treatment and the risk to the community of releasing the offender, *see* RCW 9.94A.120(7), future dangerousness is a proper consideration in sexual offense cases.

*In re Vandervlugt*, 120 Wn.2d 427, 433, 842 P.2d 950 (1992). *Barnes* and *Stewart* remove this rehabilitative inquiry from the boundaries within which the Legislature placed it.

As the sole statutory support for its rehabilitative rationale, *Barnes* cites RCW 9.94A.120(7), the sex offender sentencing alternative. But this statute does not play a role in *lengthening* sentences. From its inception, the purpose of this sentencing alternative has been to make treatment available to sex offenders. The standard range already reflects the Legislature's assessment of the risk to the public presented by repeat sex offenders. RCW 9.94A.120(7) does not evidence a legislative intent to single out sexual offenders for additional punishment beyond their standard range.

The purpose of RCW 9.94A.120(7), while

> theoretically at odds with a desert-based philosophy, is accommodated within the structure of the Act by the limitation in every case that the deprivation of liberty, regardless of the form it takes, may never exceed that deserved by the crime and the criminal history of the offender. Within those bound-

aries the perceived rehabilitative needs of these offenders are allowed to influence the nature of the sentence, but never to extend it beyond what is otherwise deserved.

Just as with deterrence and incapacitation, the Act limits the extent to which rehabilitation can affect the sentence. This formulation of a method of principled coexistence of these historically warring concepts is the essence of the "reform" in the Sentencing Reform Act.

Boerner, at 2-37 (1985).

Currently, courts may order an evaluation to determine amenability to treatment only when sentencing a first-time sex offender for an offense that is not a "serious violent offense". RCW 9.94A.120(7)(a).[8] This provision strictly defines the only circumstances in which the SRA authorizes the courts to link sex offender sentencing to a treatment inquiry, all the while staying *within* the standard sentencing range. *Barnes*, in a major departure from the statutory framework, allows a court to consider amenability to treatment when sentencing a repeat sex offender and to sentence *beyond* the standard range if the offender is found to be untreatable.

Under *Barnes*, 117 Wn.2d at 705 and *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990), before using future dangerousness as an aggravating factor,

[a]t the minimum the trial court must have before it, in addition to a history of similar acts of sexual deviancy, the opinion of a mental health professional that the defendant would likely not be amenable to treatment.

*Pryor*, 115 Wn.2d at 455. Implicitly, as a precondition for imposing a standard range sentence, the court may require that a sex offender with a history of similar acts be found amenable to treatment.

When the standard sentence becomes conditional, the exceptional sentence becomes standard. This effect vitiates the SRA's core purposes of proportionality and just punishment. Moreover, the SRA "carefully and emphatically denies

---

[8]Originally, the sex offender sentencing alternative permitted the sentencing court to inquire into treatment in connection with sentencing for other felony sex offenses as well. Subsequent amendments have removed that authority from the court except to the extent described above. *see* RCW 9.94A.120(7).

the authority to require participation in rehabilitative programs." Boerner, at 2-36. I would prefer not to perpetuate the inconsistency between existing case law and statutory authority by enlarging the group of sex offenders who may receive an exceptional sentence under *Barnes* and *Pryor*.

To the extent RCW 9.94A.120(7) justifies applying future dangerousness to sex offenders — however tenuous the connection — it does not justify an exceptional sentence for Rama. The treatment-based sentencing alternatives under RCW 9.94A.120(7) are available only to offenders convicted of a "sex offense". At the time of Rama's conviction (prior to 1990), sexually motivated burglary was not defined as a "sex offense";[9] accordingly, the statute did not apply to Rama at sentencing. There is no evidence that Rama, while serving his sentence for a 1987 burglary conviction, was ever evaluated to determine his eligibility for a treatment-based sentence under the rehabilitative provisions of RCW 9.94A.120(7). His conviction therefore should not, in fairness and rationality, be deemed a sex offense for the sole purpose of lengthening his incarceration.

The 1990 sexual motivation statute now provides a means to enhance the sentence of an offender such as Rama whose crime was committed for sexual gratification. *see* Laws of 1990, ch. 3, §§ 601-606, pp. 59-70. The sexual motivation allegation must be charged, presented to the finder of fact, and proved beyond a reasonable doubt. RCW 9.94A.127. Consistent with the SRA generally, the new statute allows a sentence to be lengthened based on the seriousness of the crime, without inquiry into the likelihood that the offender will be rehabilitated. This procedure is inapplicable in the present case because of ex post facto considerations. *see* *Stewart*, 72 Wn. App. at 894.

The majority states that its holding, as well as *Stewart*'s, is "necessarily limited" to prosecutions occurring before the effective date of the 1990 sexual motivation statute. Majority,

---

[9]*See* Laws of 1990, ch. 3, § 602(29), p. 64 (definition of "sex offense", showing amendment adding felony with a finding of sexual motivation); *see also* RCW 9.94A.030(31) (current definition).

at 507 n.4. I would hold that future dangerousness is an impermissible aggravating factor for nonsexual offenses committed with sexual motivation, whether prosecuted before or after the effective date of the 1990 sexual motivation statute. Absent the sexual motivation statute, *Stewart* concludes that a sentencing court has discretion to treat any criminal offense as a "sexual offense" — and thus to consider future dangerousness — with no criteria other than that the offense was "from a commonsense perspective . . . capable of treatment as a sexual offense."[10] *Stewart*, 72 Wn. App. at 895. I cannot join in this analysis.

In summary, the majority, relying on *Stewart*, decides that Rama is a sex offender for the purpose of considering his future dangerousness. Majority, at 507. Noting the absence of objective evidence as to Rama's lack of amenability to treatment, and following *Pryor*, the majority concludes that incarceration beyond the standard range is unwarranted. Majority, at 511. With this result, but for different reasons, I concur.

Reconsideration denied May 6, 1994.

---

[10]*But cf. Barnes*, 117 Wn.2d at 711-12 ("[t]he extension of the future dangerousness factor to nonsexual offense cases . . . allows too broad a grant of discretion to the sentencing judge, which discretion the Legislature intended to limit").